KIRAN S. LOPEZ (SBN 252467)
TESLA, INC.
901 Page Avenue
Fremont, California 94538
Telephone: (510) 239-1413
kirlopez@tesla.com

Attorneys for Defendant
TESLA, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAINA PIERCE,<br><br>          Plaintiff,<br><br>     v.<br><br>TESLA, INC., which does business in California as TESLA MOTORS, INC., and DOES 1-2050, inclusive,<br><br>          Defendants. | Case No.<br><br>**DEFENDANT TESLA, INC.'S NOTICE OF REMOVAL**<br><br>Alameda County Superior Court Case No. 22CV010315<br><br>*Complaint Filed: April 22, 2022* |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant Tesla, Inc. ("Tesla") hereby removes the above-referenced action from the Superior Court of the State of California for the County of Alameda, to the United States District Court for the Northern District of California. This removal is made pursuant to 28 U.S.C. §§1441 and 1446, asserting diversity jurisdiction under 18 U.S.C. §1332, codified in relevant part at 28 U.S.C. §1332. Tesla states that removal is proper for the following reasons.

**NOTICE OF REMOVAL**

**I.      PROCEDURAL BACKGROUND IN STATE COURT**

On April 22, 2022 Plaintiff Raina Pierce ("Plaintiff") filed a Complaint entitled, "*RAINA PIERCE, Plaintiff v. TESLA, INC. which does business in California as TESLA MOTORS, INC., and DOES 1-20, inclusive, Defendants*", Alameda County Superior Court Case No. 22CV010315 (the "Complaint"). The Complaint alleged four causes of action for: (1) Harassment in Violation of the California Fair Employment and Housing Act ("FEHA"); (2) Race-Based Discrimination in Violation of FEHA; (3) Failure to Prevent Discrimination and Harassment in Violation of FEHA; and (4) Retaliation in Violation of FEHA. A true and correct copy of the Complaint is attached hereto as **Exhibit 1.**

On May 2, 2022 Tesla was served with copies of the Summons, Civil Case Cover Sheet, Notice of Case Assignment, Notice of Case Management Conference, ADR Information Packet, and Complaint through its agent for service of process, CT Corporation, in Glendale, California. *See* concurrently filed Declaration of Kiran S. Lopez ("Lopez Decl.") at ¶2 and Exhibit A (service package).

Exhibit 1 attached hereto and Exhibit A to the concurrently filed Lopez Declaration constitute all of the pleadings served on Tesla and/or filed by Tesla in the Alameda County Superior Court prior to the filing of this Notice of Removal. Lopez Decl. at ¶3. A Case Management Conference has been scheduled in the Alameda County Superior Court for August 15, 2022. *Id.*

**II.      TIMELINESS OF REMOVAL**

This Notice of Removal is timely filed as it is filed less than one year from the date this action was commenced and within 30 days of service of the Complaint on Tesla, the moving Defendants. 28 U.S.C. §1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.* (1999) 119 S. Ct. 1322, 1325 (thirty-day deadline to remove commences upon service of the summons and complaint).

**III.      THIS COURT HAS DIVERSITY JURISDICTION OVER THIS CASE**

Subject matter jurisdiction on the basis of diversity of citizenship requires that: (1) there is complete diversity of citizenship between plaintiff and defendants; and (2) "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. §1332.

1   A Notice of Removal is sufficient "if it alleges that the parties are of diverse citizenship and that

2   the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C.

3   §1332 …" *Ellenburg v. Spartan Motos Chassis, Inc.* (4th Cir. 2008) 519 F.3d 192, 200 (internal

4   quotes and brackets omitted).

5            **A.  <u>There Is Complete Diversity Of Citizenship In This Case</u>**

6         The complete diversity requirement merely means that all plaintiffs must be of different

7   citizenship than all defendants, and any instance of common citizenship "deprives the district court

8   of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs.,*

9   *Inc.* (2005) 545 U.S. 546, 553. A party's citizenship is determined at the time the lawsuit was filed.

10  *In re Digimarc Corp. Derivative Litig.* (9th Cir. 2008) 549 F.3d 1223, 1236 ("[T]he jurisdiction of

11  the court depends upon the state of things at the time of the action [was] brought."). In the present

12  case, the parties had complete diversity of citizenship at the time the lawsuit was filed because

13  Plaintiff's citizenship is diverse from Tesla's.

14              **i.  *Plaintiff Is A Citizen Of California***

15        For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.

16  *Kantor v. Wellesley Galleries, Ltd*. (9th Cir. 1983) 704 F.2d 1088, 1090 ("To show state citizenship

17  for diversity purposes under federal common law a party must . . . be domiciled in the state."). A

18  person's domicile is the place he resides with the intent to remain indefinitely. *Kanter v. Warner-*

19  *Lambert Co*. (9th Cir. 2001) 265 F.3d 853, 857 ("A person's domicile is her permanent home,

20  where she resides with the intention to remain or to which she intends to return."). Residence is

21  *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer* (10th Cir. 1994) 19 F.3d

22  514, 520 ("the place of residence is *prima facie* the domicile").

23        Plaintiff alleges that she "is a Black female residing in the State of California." Complaint

24  at ¶7. Therefore, Tesla is informed and believes that at all relevant times for the purposes of this

25  removal, Plaintiff is and has been a citizen of the State of California.

26              **ii.  *Tesla Is Not A Citizen Of California***

27        For the purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of

28  any State by which it has been incorporated and of the State where it has its principal place of

**NOTICE OF REMOVAL**

business." 28 U.S.C. §1332(c)(1); *see also Davis v. HSBC Bank Nevada, N.A.* (9th Cir. 2009) 557 F.3d 1026, 1028 (citing 28 U.S.C. § 1332(c)(1)).

The Supreme Court of the United States in *The Hertz Corp. v. Friend* held that a corporate entity's "principal place of business" for determining its citizenship is its "nerve center":

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." **And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center"** ....

(2010) 559 U.S. 77, 92-93 (emphasis added).

Plaintiff alleges that Tesla, Inc. does business in California as Tesla Motors, Inc. Complaint at ¶8. Tesla, Inc. is now, and was at the time of the filing of this action, a corporation organized and formed under the laws of the State of Delaware, with its principal place of business and headquarters in Austin, Texas.[1]

Tesla Motors, Inc. is now, and was at the time of the filing of this action, a corporation organized and formed under the laws of the State of Delaware, with its principal place of business and headquarters in Austin, Texas.[2]

Therefore, at all times since Plaintiff commenced this lawsuit, both Tesla, Inc. are and have been citizens of a state other than California within the meaning of 28 U.S.C. §1332(c)(1). At all relevant times, both Tesla, Inc.  and Tesla Motors, Inc. are and have been citizens of the States of Delaware and Texas.

---

[1] Tesla's Form 10-K for the fiscal year ended December 21, 2021, which is a public document and publicly accessible through the United States Securities and Exchange Commission's website, lists Delaware as Tesla's State of Incorporation and 13101 Tesla Road, Austin, Texas as Tesla's principal executive offices:
https://www.sec.gov/Archives/edgar/data/1318605/000095017022000796/tsla-20211231.htm.

[2] Tesla Motors, Inc.'s Corporation-Statement of Information filed March 18, 2022 with the California Secretary of Statement, which is a public document and publicly accessible through the California Secretary of State's website, lists Delaware as the entity's jurisdiction and 1 Tesla Road, Austin, Texas as the address of the entity's principal executive office: https://businesssearch.sos.ca.gov/.

**NOTICE OF REMOVAL**

### iii.    *Doe Defendants Should Be Disregarded*

Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. §133; *Fristos v. Reynolds Metals Co.* (9th Cir. 1980) 615 F.2d 1209, 1213 (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe defendants in this case does not deprive this Court of jurisdiction. Accordingly, pursuant to 28 U.S.C. §1332(c), Plaintiff and the real Defendant, Tesla, have diverse citizenship.

### B.    <u>The Amount In Controversy Requirement Has Been Met</u>

### i.    *Standard To Demonstrate Amount In Controversy*

While Tesla denies any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000. *See Sanchez v. Monumental Life Ins*. (9th Cir. 1996) 102 F.3d 398, 403-404) ("the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount.") (internal citation omitted). As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co*. (9th Cir. 2004) 372 F.3d 1115, 1117 (finding that the Court may consider facts presented in the removal petition). In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, compensatory damages, punitive damages, and attorneys' fees where recoverable by law. *See Guglielmino v. McKee Foods Corp*. (9th Cir. 2007) 506 F.3d 696, 700 ("Section 1332(a)'s amount-in-controversy requirement excludes only 'interest and costs.'"); *see also Galt G/S v. JSS Scandinavia* (9th Cir. 1998) 142 F.3d 1150, 1156 (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mutual Benefit Health & Accident Ass'n*. (9th Cir. 1963) 325 F.2d 785, 787 (punitive damages must be taken into account where recoverable under state law); *Conrad Assocs. v. Hartford Accident & Ind. Co.* (N.D. Cal. 1998) 994 F. Supp. 1196, 1198 ("amount in controversy" includes claims for general and special damages). Accordingly, a removing defendant must demonstrate that the amount in controversy is more than $75,000 only by a preponderance of the

evidence, not to a legal certainty.

In the Complaint, Plaintiff requests (1) compensatory damages; (2) general damages; (3) consequential damages; (4) punitive damages; (5) statutory penalties interest; (6) attorneys' fees; and (7) costs. Complaint at Prayer for Relief, 10:4-15. In light of the expansive categories of damages sought by Plaintiff, the amount in controversy in this action is more likely than not to exceed the $75,000 jurisdictional minimum.

### ii.   *General and Punitive Damages Exceed $75,000*

Although Tesla denies that it should be liable for any damages whatsoever in this case, assuming *arguendo* for the purposes of removal that Plaintiff prevails, Plaintiff is seeking an award of compensatory, general, consequential, and punitive damages. Complaint at Prayer for Relief, 10:4-10. Plaintiff alleges she "has suffered emotional and mental distress, fear, anxiety, humiliation and embarrassment." *Id*. at ¶83. Plaintiff also seeks to recover punitive damages. Requests for punitive damages must be taken into account in ascertaining the amount in controversy. *Davenport*, 325 F.2d at 787. The amount of punitive damages awarded is based on the financial worth of the defendant, and is meant to punish the defendant in such a way that it will have a tangible financial consequence. Without conceding that punitive damages are appropriate or applicable here, for a defendant of Tesla's size, it is probable that a punitive damages award, if assessed, would exceed $75,000.00.

### iii.   *Verdicts In Cases With Similar Claims Exceed $75,000*

To establish the amount in controversy, a defendant may rely on jury verdicts in cases involving similar facts. *Simmons v. PCR Tech*. (N.D. Cal. 2002) 209 F. Supp. 2d 1029, 1033; *Kroske v. U.S. Bank Corp.* (9th Cir. 2005) 432 F.3d 976, 980. California jury verdicts in cases involving claims similar to Plaintiff's often exceed $75,000. *See, e.g.*, *Ko v. The Square Group LLC dba The Square Supermarket* (June 16, 2014) Los Angeles Sup. Ct., Case No. BC487739 ($190,712.36 verdict on plaintiff's claims for discrimination, retaliation, wrongful termination in violation of public policy, and wage and hour claims and $500,000 in punitive damages); *Kamali v. Cal. Dep't of Transp.* (Dec. 20, 2012) Los Angeles Sup. Ct., Case No. BC426247 (verdict for $663,983 on plaintiff's claims for national origin and disability discrimination); *Hernandez v.*

*Regents of the Univ. of Cal.* (June 29, 2010) Alameda County Sup. Ct., Case No. RG06272564 (verdict for $266,347 on disability discrimination, national origin discrimination, and retaliation claims).

Because Plaintiff's allegations that she was harassed, discriminated against, and retaliated against based upon her race are similar to the claims and issues raised in the cases cited above, these awards demonstrate that, for diversity purposes, it is probable that any verdict in this matter in Plaintiff's favor would award damages exceeding $75,000.

### iv.    *Attorneys' Fees Exceed $75,000*

Plaintiff also seeks attorneys' fees. Verdicts in comparable cases show that attorneys' fees typically exceed $75,000.00. *See Denenberg v. Cal. Dep't of Transp.* (San Diego County Sup. Ct. Sept. 14, 2006) 2007 WL 2827715 (attorney's fees award of $490,000.00 in case alleging discrimination, harassment, and retaliation); *McMillan v. City of Los Angeles* (Los Angeles County Sup. Ct. March 21, 2005) 2005 WL 3729094, Case No. BC298898 (attorney's fees award of $504,926.00 in case alleging discrimination and retaliation for filing lawsuit to redress discrimination); *Gallegos v. Los Angeles City College* (Los Angeles County Sup. Ct. Oct. 16, 2003) (attorney's fees award of $159,277.00 for claim of discrimination and retaliation). Therefore, the inclusion of a claim for attorneys' fees also supports the conclusion that the amount in controversy in this matter exceeds $75,000.00.

Consequently, because there is complete diversity of citizenship and the amount in controversy clearly exceeds $75,000, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§1332(a) and 1441(b).

## IV.    VENUE

Venue lies in the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§84(c)(2), 1441, and 1446. This action originally was brought in the Superior Court of the State of California, Alameda County, which is located within the Northern District of California. Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. §1441(a).

NOTICE OF REMOVAL

**V.**     **SERVICE OF NOTICE OF REMOVAL ON PLAINTIFF AND THE CLERK OF THE SUPERIOR COURT**

Pursuant to 28 U.S.C. §1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and her counsel, and together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, Alameda County.

**VI.**     **PRAYER FOR REMOVAL**

WHEREFORE, Tesla prays that this civil action be removed from the Superior Court of the State of California, County of Alameda, to the United States District Court for the Northern District of California.

DATED: May 31, 2022                          Respectfully submitted,

TESLA, INC.

By: */s/ Kiran S. Lopez*
Kiran S. Lopez
Attorney for Defendant
TESLA, INC.

NOTICE OF REMOVAL

# EXHIBIT

# 1

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
04/22/2022 at 09:58:26 PM
By: Cheryl Clark, Deputy Clerk

**HUNTER PYLE, SBN 191125**
**NATALIA RAMIREZ LEE, SBN 322017**
HUNTER PYLE LAW
1300 Broadway, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Email(s):   hunter@hunterpylelaw.com;
            nramirezlee@hunterpylelaw.com

Attorneys for Plaintiff

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| RAINA PIERCE,<br><br>        Plaintiff,<br><br>    vs.<br><br>TESLA, INC. which does business in California as TESLA MOTORS, INC., and DOES 1-20, inclusive,<br><br>        Defendants. | Case No.: 22CV010315<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **HARASSMENT (FEHA);**<br>2. **RACE-BASED DISCRIMINATION (FEHA);**<br>3. **FAILURE TO PREVENT DISCRIMINATION & HARASSMENT (FEHA); AND**<br>4. **RETALIATION (FEHA)**<br><br>**DEMAND FOR JURY TRIAL** |

1   Plaintiff RAINA PIERCE ("Plaintiff") alleges as follows:

2                               **I.      INTRODUCTION**

3        1.      Plaintiff began working at TESLA, INC. which does business in California as TESLA

4   MOTORS, INC. ("TESLA") in approximately January 2021.

5        2.      Throughout her employment, Plaintiff has been subject to a pattern and practice of

6   harassment and discrimination by various TESLA supervisors.

7        3.      Some of Plaintiff's direct supervisors at TESLA regularly used racial slurs to

8   degrade, belittle, ridicule, and dehumanize her. TESLA knew or should have known of this

9   harassment but failed to take adequate measures to protect Plaintiff.

10       4.      After Plaintiff complained about the harassment and discrimination to TESLA,

11  TESLA placed Plaintiff on leave and prevented her from returning to work.

12       5.      This harassment and discrimination has created intolerable working conditions for

13  Plaintiff.

14       6.      Plaintiff brings this case alleging causes of action for: (1) harassment; (2)

15  discrimination; (3) failure to prevent discrimination and harassment; and (4) retaliation.

16                          **II.      PARTIES AND JURISDICTION**

17       7.      Plaintiff is a Black female residing in the State of California. Plaintiff began working

18  for TESLA in Alameda County in approximately January 2021.

19       8.      TESLA, INC. doing business in California as TESLA MOTORS, INC. is a Delaware

20  corporation licensed to do business by virtue of the laws of the State of California. TESLA maintains

21  its headquarters in Palo Alto, California, and operates and engages in business in the City of

22  Fremont, located in the County of Alameda, California.

23       9.      The true names and capacities, whether individual, corporate, associate, agent, or

24  otherwise, of the Defendants named herein as Does 1 through 20 are unknown to Plaintiff, who

25  therefore sue said Defendants by such fictitious names. Plaintiff is informed and believes, and

26  thereon alleges, each such fictitiously named Defendant is responsible in the manner set forth herein,

27  or some other manner, for the occurrences alleged herein, and that the damages as alleged herein

28

1    were proximately caused by their conduct. Plaintiff is informed and believes, and thereon alleges,

2    that each of the fictitiously named Defendants is a California resident. Plaintiff will amend this

3    complaint to allege their true names and capacities.

4        10.    Venue is proper in the County of Alameda for the following reasons: TESLA

5    operates and engages in business in the City of Fremont, located in the County of Alameda,

6    California. Additionally, the acts, omissions, conduct, contracts, promises and violations of the law

7    herein alleged were done, made or performed in substantial part in the County of Alameda. This

8    Court has jurisdiction over this action pursuant to Article 6, section 10 of the California Constitution

9    and California Code of Civil Procedure section 410.10.

10                   **III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11       11.    Plaintiff has exhausted the applicable remedies available to her under the California

12   Fair Employment and Housing Act ("FEHA") by timely filing a complaint regarding the matters

13   described below with the California Department of Fair Employment and Housing ("DFEH") on

14   March 16, 2022.

15       12.    The DFEH issued a Notice of Case Closure and Right to Sue Letter to Plaintiff that

16   same day.

17                   **IV.    STATEMENT OF THE CASE**

18       13.    Plaintiff began working for TESLA as a Production Associate in Alameda County in

19   approximately January 2021. Plaintiff is a current employee of TESLA.

20       14.    As a Production Associate, Plaintiff works on a vehicle door production line. Her job

21   involves installing latches onto vehicle doors.

22       15.    Plaintiff is supervised by Kevin Schofner, Acting Supervisor, Alexander Salinas,

23   Production Lead and Samantha Lee, Production Lead.

24                          **Racial Animus at TESLA**

25       16.    Mr. Salinas sometimes greets workers by saying "welcome to the plantation" or

26   "welcome to the slave house." In addition, Tesla's facilities contain the n-word throughout. For

27   example, stalls and bathrooms walls say "f*** these n-word" or "f***** n-word."

28

1  17.  Supervisors have referred to Plaintiff as the n-word and a b\*\*\*h. Supervisors often

2  speak in Spanish about Plaintiff's work, stating that she is "useless."

3  18.  In approximately April of 2021, Plaintiff was assigned to push heavy carts on her own,

4  a job which was typically performed by two people. Plaintiff complained about having to push the

5  heavy cart to Mr. Salinas via text message. Mr. Salinas ignored Plaintiff's text messages.

6  19.  The Area Director noticed Plaintiff struggling to push the cart and Plaintiff explained

7  to him that she suffered from leg pain and that the carts were too heavy to be pushed by a single person.

8  The Area Director noted that while Plaintiff was pushing the cart on her own, two men were pushing

9  a cart of the same size as Plaintiff's. The Area Director called Mr. Salinas' and Ms. Schofner's

10  attention for directing Plaintiff to perform a job on her own that should have been performed by two

11  people.

12  20.  Plaintiff then returned to the production line and noticed that Mr. Salinas was visibly

13  upset and using expletives. Mr. Salinas turned to others on the production line and said "F\*\*\* this

14  s\*\*\*, that b\*\*\*\* got me in trouble." Mr. Salinas later stated, "I can't stand these Black

15  motherf\*\*\*\*\*s!" in Spanish.

16  21.  In approximately May 2021, an employee from a different production line temporarily

17  joined Plaintiff's production line. The temporary employee told Plaintiff, "Ma'am, you need to go to

18  HR because these leads are saying things about you that are not right."

19  **TESLA's Differential Treatment of Plaintiff and Other Black Employees**

20  22.  Plaintiff received less favorable treatment by supervisors than production workers who

21  were not Black. Non-Black employees asked and received "station swaps" regularly. However, when

22  Plaintiff requested to move to a different workstation, her requests were regularly denied. In addition,

23  Plaintiff's co-workers recall that Plaintiff's supervisors would respond to her rudely and talk poorly

24  about her when she left.

25  23.  Plaintiff was disciplined more frequently and more severely than workers who are not

26  Black. For instance, on one occasion, Mr. Salinas told Plaintiff to "get your s\*\*\* together" when

27

28

returning late from a rest break. In contrast, a non-Black co-worker, was told by Mr. Salinas to "not do it again."

24.     On another occasion, Ms. Lee aggressively yelled at Plaintiff for not staying in her "work pitch area." Plaintiff observed that Ms. Lee did not yell at employees who were not Black for not staying in the work pitch area.

25.     On another occasion, Plaintiff stripped a screw on the production line and was subsequently disciplined for poor performance. However, production associates who were not Black and who routinely stripped screws on the production line were not disciplined.

26.     In approximately September of 2021, Mr. Schofner asked Plaintiff to train a new Black production associate. Plaintiff observed the new production associate making steady progress as a trainee and believed he was learning the process and performing well. The same day, after asking Plaintiff to train him, Mr. Shofner pulled Plaintiff aside and asked her how the new production associate was doing. Plaintiff responded that he was doing a good job. Mr. Shofner interjected and scoffed: "No, guys like that can't learn s**t! I'm pulling him off the line." Minutes later, Mr. Shofner proceeded to pull the new Black production associate off of the line.

### Plaintiff Complains About the Harassment and Discrimination

27.     In approximately May of 2021, Plaintiff reported the harassment and discrimination she was enduring to Tesla's Human Resources department. Plaintiff did not receive any information regarding whether her complaint was investigated or a copy of any investigation report. Shortly after her report, Ms. Lee was reassigned to a different production line.

### TESLA Places Plaintiff on Leave and Denies her the Opportunity to Return to Work for Approximately 3 Months

28.     In approximately April 2021, Plaintiff began to experience a sharp leg pain in her left leg which began in her knee and moved down to her calf. Standing for long periods of time, walking long distances or carrying heavy items, aggravated her leg pain.

29.     At approximately the end of September 2021, Plaintiff began to experience particularly severe leg pain. In addition, Plaintiff suffered from a Urinary Tract Infection ("UTI") –

4

1    which led to her feeling weak, lethargic and nauseous. Plaintiff called out sick and was notified that

2    she was placed on leave and instructed to submit a return-to-work note from her doctor before

3    returning to Tesla.

4        30.    Plaintiff sent her return-to-work letter via fax to Sedgwick, Claims Management

5    Services, Inc. ("Sedgwick"), a third-party leave administrator for TESLA. After not hearing back

6    from Sedgwick, Plaintiff contacted Tesla directly. Tesla instructed Plaintiff to contact Sedgwick.

7    Plaintiff reached out to Sedgwick, again. Sedgwick informed Plaintiff that it had reached out to

8    Tesla on four separate occasions and Tesla had failed to communicate with them regarding Plaintiff.

9    Sedgewick then informed Plaintiff that it believed that Plaintiff had already returned to work.

10       31.    Upon information and belief, while Plaintiff was on leave, Plaintiff's supervisors

11   responded to employees who inquired about Plaintiff by stating: "we're waiting for her to get kicked

12   out of the team."

13       32.    In approximately late January of 2022, Plaintiff was contacted by Sedgwick and

14   again, asked to provide a return-to-work note from her doctor. Plaintiff informed Sedgwick that she

15   had already provided a return-to-work note, she was attempting to return to work since

16   approximately September 2021 and she was going to retain an attorney. Shortly thereafter, Plaintiff

17   was permitted to return to work at Tesla.

18            **Plaintiff Returns to Work and the Discrimination and Harassment Continues**

19       33.    While Plaintiff was on leave, Ms. Lee was reassigned to Plaintiff's production line

20   and Plaintiff was again placed under the supervision of Ms. Lee.

21       34.    On approximately March 2, 2022, Plaintiff suffered an asthma attack while on the

22   production line. Plaintiff requested to retrieve an asthma inhaler from her car and asked Ms. Lee

23   where Mr. Schofner was. Ms. Lee responded that she did not know and abruptly walked away.

24            **Plaintiff Reports the Discrimination and Harassment, Again**

25       35.    Shortly after suffering the asthma attack, Plaintiff reported Ms. Lee's hostile

26   treatment to Mr. Shoefner and Jacob Desir, Assistant Manager.

27

28

## FIRST CAUSE OF ACTION
### Harassment in Violation of Cal. Gov't Code § 12940

36.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

37.     California Government Code section 12940(j) provides that it shall be unlawful for an employer to harass an employee. The FEHA holds employers strictly liable for harassment by supervisors.  Section 12940(j) further provides that harassment of an employee, "by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action."

38.     At all relevant times herein, Plaintiff's supervisors, engaged in the harassing conduct.

39.     At all relevant times herein, Plaintiff was an employee of TESLA when she was being harassed by TESLA employees, including supervisors.

40.     Plaintiff was subjected to harassing conduct due to her race and sex/gender.

41.     The harassing conduct was severe or pervasive.

42.     A reasonable Black female in Plaintiff's circumstances would have considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive.

43.     Plaintiff considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive.

44.     TESLA supervisors engaged in or encouraged the harassing conduct.

45.     TESLA knew or should have known of the harassing conduct and failed to take immediate and corrective action.

46.     In committing these actions, TESLA violated the FEHA.

47.     Plaintiff was harmed by TESLA's actions.

48.     TESLA's actions were a substantial factor in causing Plaintiff's harm.

49.     TESLA committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of Plaintiff's rights, in that TESLA supervisors harassed Plaintiff and TESLA failed to take corrective action to prevent the harassment of Plaintiff, despite the fact that TESLA

knew about the harassment and knew of the supervisors' history of harassment toward Black and female employees. Thus, Plaintiff is entitled to recover punitive damages from TESLA.

50. As a direct, foreseeable and proximate result of the acts of TESLA, Plaintiff has suffered damages in an amount according to proof.

WHEREFORE, Plaintiff requests judgment against TESLA as set forth below.

## SECOND CAUSE OF ACTION
### Race Discrimination in Violation of Cal. Gov't Code § 12940

51. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

52. California Government Code Section 12940(a) provides that it shall be unlawful for an employer to discriminate against an employee "in compensation or in terms, conditions, or privileges of employment."

53. At all relevant times herein, Plaintiff was an employee of TESLA.

54. TESLA engaged in adverse employment actions including but not limited to, placing Plaintiff on leave and not permitting her to return to work.

55. Plaintiff is a Black female.

56. Plaintiff's race was a substantial motivating reason for TESLA's adverse employment actions including but not limited to placing her on leave and not permitting her to return to work.

57. Plaintiff was harmed.

58. TESLA's conduct was a substantial factor in causing Plaintiff's harm.

59. TESLA committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Thus, Plaintiff is entitled to recover punitive damages from TESLA.

60. As a direct, foreseeable and proximate result of the acts of TESLA, Plaintiff has suffered damages in an amount according to proof.

WHEREFORE, Plaintiff requests judgment against TESLA as set forth below.

**THIRD CAUSE OF ACTION**
**Failure to Prevent Discrimination & Harassment**
**in Violation of Cal. Gov't Code § 12940**

61.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

62.     California Government Code Section 12940(k) provides that it shall be unlawful for an employer to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

63.     At all relevant times herein, Plaintiff was an employee of TESLA.

64.     Plaintiff was subjected to harassing and discriminating conduct because of her protected status as a Black female.

65.     The harassing conduct directed toward Plaintiff was so severe, widespread, or persistent that a reasonable person in Plaintiff's circumstances would have considered the work environment to be hostile or abusive.

66.     Plaintiff considered the work environment to be hostile or abusive.

67.     TESLA knew or should have known of the harassing and discriminatory conduct and failed to take all reasonable steps necessary to prevent the discrimination and harassment from occurring.

68.     In committing these actions, TESLA violated the FEHA.

69.     Plaintiff suffered harm.

70.     The failure of TESLA to take reasonable steps to prevent discrimination and harassment, was a substantial factor in causing Plaintiff's harm.

71.     TESLA committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of Plaintiffs' rights. Thus, Plaintiff is entitled to recover punitive damages from TESLA.

72.     As a proximate result of the acts of TESLA, Plaintiff has suffered damages in an amount according to proof.

1    WHEREFORE, Plaintiff requests judgment against TESLA as set forth below.

2    ## FOURTH CAUSE OF ACTION
### Retaliation in Violation of Cal. Gov't Code §12940(h)

3

4    73.    The allegations of each of the preceding paragraphs are realleged and incorporated

5    herein by reference.

6    74.    Plaintiff complained to TESLA regarding the FEHA violations, including

7    discrimination and harassment.

8    75.    TESLA placed Plaintiff on leave and denied her the opportunity to return to work for

9    over three (3) months.

10   76.    Upon information and belief, while Plaintiff was on leave, Plaintiff's supervisors

11   stated: "we're waiting for her to get kicked out of the team," referring to Plaintiff.

12   77.    Plaintiff's complaints of unlawful conduct including discrimination and harassment

13   were a motivating reason for TESLA's decision to place Plaintiff on leave and deny her the

14   opportunity to return to work.

15   78.    Plaintiff was harmed by TESLA.

16   79.    TESLA's conduct was a substantial factor in causing Plaintiff's harm.

17   80.    TESLA committed the acts alleged herein oppressively and maliciously, with the

18   wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and

19   in conscious disregard of Plaintiff's rights.  Thus, Plaintiff is entitled to recover punitive damages

20   from TESLA.

21   81.    As a proximate result of the acts of TESLA, Plaintiff has suffered damages in an

22   amount according to proof.

23   WHEREFORE, Plaintiff prays for judgment against TESLA as set forth below.

24   ## V.    DAMAGES

25   82.    As a proximate result of the conduct by TESLA, Plaintiff has suffered and continues

26   to suffer economic loss.

27   83.    As a further proximate result of the conduct by TESLA, Plaintiff has suffered

28   emotional and mental distress, fear, anxiety, humiliation and embarrassment.

84.     Plaintiff was required to retain private counsel to vindicate her rights under law. Plaintiff is therefore entitled to an award of all attorneys' fees incurred in relation to this action for violation of her civil rights.

WHEREFORE, Plaintiff requests relief from TESLA as follows:

1.     For compensatory damages for lost past and future wages, earnings, and benefits, according to proof;

2.     For general damages for humiliation, mental anguish and emotional distress, according to proof;

3.     For consequential damages, according to proof;

4.     For punitive damages, according to proof;

5.     For statutory penalties, according to proof;

6.     For reasonable attorneys' fees, according to proof;

7.     For reasonable costs, according to proof;

8.     Injunctive relief to address the wrongs alleged herein; and

9.     For such other and further relief as the Court may deem just and proper.

DATED: April 22, 2022                              HUNTER PYLE LAW

By: _____
Hunter Pyle
Natalia Ramirez Lee

Attorneys for Plaintiff

10

*PIERCE V. TESLA, INC.*
**COMPLAINT FOR DAMAGES**

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiff hereby demands a jury trial.

3

4    DATED: April 22, 2022                    HUNTER PYLE LAW

5

6                                            By: _____

7                                            Hunter Pyle
                                             Natalia Ramirez Lee

8                                            Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*PIERCE V. TESLA, INC.*
**COMPLAINT FOR DAMAGES**

**PROOF OF SERVICE**

I declare that I am employed in the County of Alameda, State of California.  I am over the age of eighteen years and not a party to the within cause; my business address is 901 Page Avenue, Fremont, California 94538.  On the date set forth below, I served the attached:

**DEFENDANT TESLA, INC.'S NOTICE OF REMOVAL**

on the following interested party(s) in said cause:

Natalie Ramirez Lee (*nramirezlee@hunterpylelaw.com*);
Hunter Pyle (*hunter@hunterpylelaw.com*)
**HunterPyle Law**
5050 14th Street, Suite 320
Oakland, CA 94612
PH: 510-444-4400

**[   ] VIA MAIL -- CCP §1013(a), 2015.5:**
By placing a true copy thereof enclosed in a sealed envelope(s), addressed as above, and placing each for collection and mailing on that date following ordinary business practices. I am readily familiar with my firm's business practice of collection and processing of correspondence for mailing with the United States Postal Service and correspondence placed for collection and mailing would be deposited with the United States Postal Service at Fremont, California, with postage thereon fully prepaid, that same day in the ordinary course of business.

**[   ] VIA OVERNIGHT MAIL/COURIER -- CCP §1013(c), 2015.5:**
By placing a true copy thereof enclosed in a sealed envelope(s), addressed as above, and placing each for collection by overnight mail service or overnight courier service.  I am readily familiar with my firm's business practice of collection and processing of correspondence for overnight mail or overnight courier service, and any correspondence placed for collection for overnight delivery would, in the ordinary course of business, be delivered to an authorized courier or driver authorized by the overnight mail carrier to receive documents, with delivery fees paid or provided for, that same day, for delivery on the following business day.

**[X] VIA E-MAIL OR ELECTRONIC TRANSMISSION -- CCP §§1010.6, 1013(e), 2015.5, CRC 2008:**
Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.  I am readily familiar with my firm's business practice of processing and transmitting documents via e-mail or electronic transmission(s) and any such documents would be transmitted in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on May 31, 2022, at San Francisco, California.

WILLIAM NERVIS